Filed 4/25/16  P. v. Randolph CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B264697 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA089035) |
| v. | |
| RANDY RANDOLPH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stanley Blumenfeld, Judge.  Affirmed.

Michael R. Parker for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Randy Randolph (aka Rayshawn Porter) appeals from the judgment entered after a jury convicted him of one count of robbery and one count of attempted robbery. Randolph contends his privately retained counsel provided ineffective assistance at trial. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

Randolph was charged with one count of robbery (Pen. Code, § 211)[1] and one count of attempted robbery (§§ 211, 664). The information also alleged Randolph had suffered a prior serious felony conviction within the meaning of section 667, subdivision (a), and the three strikes law (§§ 667, subds. (b)-(i), 1170.12) and had served four prior prison terms for felonies (§ 667.5, subd. (b)). Randolph pleaded not guilty and denied the special allegations.

2. *The People's Evidence*

In October 2012 Frank Jameson, a college student at the University of Southern California, posted an ad on Craigslist offering to sell an iPad. He received a text message from a woman identifying herself as Mia who said she wanted to buy the iPad. Jameson arranged to meet her in the parking lot of a McDonald's restaurant near the USC campus. When Jameson arrived, Mia directed him to a dark blue or gray Toyota Prius driven by an African-American man. Jameson approached the front passenger window of the Prius to speak with the woman sitting in the passenger seat. She gave him an envelope that appeared to contain cash, and he handed her the iPad. She asked him a few questions about the iPad, while Jameson rested his forearms in the open window of the Prius. As the woman handed the iPad to the driver, he accelerated, pulling Jameson, who was forced to run alongside the car. The driver turned the car into the street and sped away. The envelope contained only a few dollar bills and blank pieces of paper. Jameson did not report the theft to the police but sent a text to Mia claiming he had informed police and had given them the license plate number.

---

[1] Statutory references are to this code.

2

In September 2012 Anthony To placed an ad on Craigslist offering to sell a MacBook Pro. He received a text message from a potential purchaser who agreed to meet To next to a Starbucks cafe in Pasadena on the evening of September 30, 2012. To's father-in-law, Fred Yue, drove To and his wife to the meeting place. The buyer arrived in a Toyota Prius and alerted To she had arrived. Yue parked his car next to the Prius. To got out of Yue's car and spoke with the woman through the driver's window. As they spoke, an African-American man approached To. In an aggressive tone the man, later identified as Randolph, demanded To give him the computer and tried to grab it from To. After a brief struggle To managed to pull the computer away from Randolph and threw it into Yue's car. Randolph then lifted the right side of his shirt approximately four inches, a gesture To interpreted as meaning Randolph had a weapon, and yelled to the driver, "Honey, grab my .45." Believing Randolph was armed, To got into Yue's car. Randolph returned to the Prius, which then sped away. Yue followed the Prius and obtained the license plate number, which he reported to the Pasadena police.

The police traced the Prius to a woman living in Malibu, who identified Randolph as the only man she had allowed to use the car. Cell tower records showed Randolph's phone had been in the vicinity of the Starbucks' parking lot on September 30, 2012. On two occasions a Pasadena police officer separately showed To and Yue photographic lineups. The first lineup did not contain Randolph's photograph. To selected one of the photographs and said he was not sure it was the same man. Yue selected two different photographs from the same lineup and also expressed uncertainty. Several months later the men were shown a lineup containing Randolph's photograph. To again selected a photograph of a different man; Yue selected Randolph's photograph and wrote, "I think it's the guy."

In December 2012 Pasadena police obtained records for Randolph's cell phone that included the content of his text messages and showed a Craigslist sale to Jameson "had gone bad." Pasadena Police Detective David Duran contacted Jameson, who told Duran about the robbery. In February 2013 Duran showed Jameson a lineup containing a

photograph of Randolph. Jameson immediately selected Randolph's photograph and told Duran he was sure the man depicted had driven the Prius.

Shortly after Randolph was arrested in February 2013, police also arrested his girlfriend, Renee Wrather. Wrather initially denied she had been with Randolph on the night of the To attempted robbery. She confessed after one of the detectives told her the Prius did not belong to Randolph's sister, as he had told her, but to another woman Randolph had been seeing. Wrather told Detective Duran that Randolph had directed her to approach the victim to gain his trust and said he would then take the computer by "knocking out the victim." Wrather was charged on both counts and pleaded no contest to the attempted robbery charge pursuant to an agreement requiring her to spend six months in jail, followed by three years of probation. She was subpoenaed to testify at trial. After initially pretending she did not recall who was in the car with her during the attempted robbery, she dropped the pretense and implicated Randolph in the crimes.

The defense rested without presenting any evidence. On November 18, 2014, after deliberating for less than an hour, the jury convicted Randolph on both counts. Randolph admitted all of the prior conviction allegations.

3. *Sentencing and the Motion for a New Trial*

On the eve of sentencing Randolph retained new counsel, who advised the court he intended to move for a new trial. The motion for a new trial, heard on May 7, 2015, was based on the same claims of ineffective assistance of counsel as are presented on appeal. Relying on a conclusory declaration asserting his cousin—whom Randolph had allowed to borrow his phone and car—had committed the crimes, Randolph blamed his counsel for failing to locate the cousin (who had moved to Texas) or to obtain evidence relating to Randolph's alibi (he claimed he had been in a recording studio with a friend on the night of September 30, 2012). When pressed by the court for evidence supporting these assertions, Randolph's new counsel acknowledged he had not been able to contact the cousin and had not questioned trial counsel about his efforts to do so. The new counsel also admitted he had not obtained any declaration or evidence from the alibi witness or located the receipts for the iPads, iPhones and MacBooks the police found

4

when Randolph was arrested.  The trial court denied the motion for a new trial, sentenced Randolph to an aggregate state prison term of 10 years four months[2] and imposed applicable fines, fees and victim restitution.

## DISCUSSION

1. *Standard of Review for Claims of Ineffective Assistance of Counsel*

The right to counsel guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution "'includes, and indeed presumes, the right to effective counsel. . . .'" (*People v. Blair* (2005) 36 Cal.4th 686, 732.)  "'To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.'" (*People v. Johnson* (2015) 60 Cal.4th 966, 979-980; accord, *In re Crew* (2011) 52 Cal.4th 126, 150; see *Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2052, 80 L.Ed.2d 674].)  "'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant.  The proof . . . must be a demonstrable reality and not a speculative matter.'" (*People v. Karis* (1988) 46 Cal.3d 612, 656; accord, *People v. Vines* (2011) 51 Cal.4th 830, 875.)

There is a presumption the challenged action or inaction "'might be considered sound trial strategy'" under the circumstances. (*Strickland v. Washington, supra,* 466 U.S. at p. 689; accord, *People v. Gamache* (2010) 48 Cal.4th 347, 391; *People v. Carter* (2003) 30 Cal.4th 1166, 1211.)  Moreover, "[i]n reviewing a claim of ineffective assistance of counsel, we give great deference to counsel's tactical decisions." (*People v. Johnson, supra,* 60 Cal.4th at p. 980.)  In addition, on a direct appeal a conviction will be reversed for ineffective assistance of counsel only when the record demonstrates there

---

[2] The court imposed the low term of two years for robbery, doubled pursuant to the three strikes law, plus a consecutive sentence of eight months (one-third the middle term) for attempted robbery, doubled pursuant to the three strikes law, plus five years for the prior serious felony conviction enhancement.  The court appears to have dismissed the prior prison term allegations, which Randolph had admitted, when it imposed sentence.

could have been no rational tactical purpose for counsel's challenged act or omission. (*Gamache,* at p. 391; *People v. Anderson* (2001) 25 Cal.4th 543, 569; *People v. Lucas* (1995) 12 Cal.4th 415, 442.)

Finally, in considering a claim of ineffective assistance of counsel, it is not necessary to determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" (*People v. Carrasco* (2014) 59 Cal.4th 924, 982, quoting *Strickland v. Washington, supra,* 466 U.S. at p. 697; accord, *In re Champion* (2014) 58 Cal.4th 965, 1007 [defendant must demonstrate a "reasonable probability" that absent counsel's failings the result would have been more favorable].)

2. *Randolph Has Failed To Show He Was Prejudiced by His Counsel's Deficient Performance*

Randolph contends his counsel failed to meet professional standards during trial by failing to produce receipts for the multiple iPads, iPhones and MacBooks found in his house at the time of his arrest, referring to some witnesses by the wrong name and confusing their testimony, failing to object during the prosecutor's questioning of Wrather and failing to secure exculpatory evidence. The record does not support Randolph's contentions.

With respect to the missing receipts for items found in Randolph's possession at the time of his arrest, there is no indication in the record Randolph ever provided those receipts to trial or appellate counsel or disclosed their location. Jameson's missing iPad was not found at the house, and none of the charges at trial related to the items found there. Moreover, Detective Duran acknowledged the items had been returned to Randolph when the police were unable to determine they had been stolen. Consequently, it is difficult to imagine how Randolph was prejudiced by the failure to produce receipts for these items or, in any event, how they could have been introduced and admitted into evidence since Randolph chose not to testify.

6

Randolph's next contention—that his counsel's confusion about certain witnesses and testimony impaired his credibility with the jury—is similarly meritless. Randolph, like any other criminal defendant, was entitled to a fair trial, not a perfect one (*People v. Anzalone* (2013) 56 Cal.4th 545, 556; *People v. McDowell* (2012) 54 Cal.4th 395, 442), and to reasonably competent counsel, not a flawless, let alone successful, defense. (See *Yarborough v. Gentry* (2003) 540 U.S. 1, 8 [124 S.Ct. 1, 157 L.Ed.2d 1] ["[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight"]; see also *People v. Zikorus* (1983) 150 Cal.App.3d 324, 335; *People v. Wallin* (1981) 124 Cal.App.3d 479, 484-485.) The court and witnesses corrected the minor misstatements of counsel, thus ensuring the jury was not misled; and Randolph has not identified any prejudice resulting from the alleged misstatements.

In what is surely Randolph's most myopic complaint, he criticizes his counsel's failure to object to the prosecutor's questioning of Wrather in which the prosecutor referred to Randolph as the person accompanying her to the Starbucks parking lot on September 30, 2012. Wrather at first testified she did not remember who had been with her, a lie obvious to all in the courtroom. Quickly enough, she abandoned that ruse. For evident tactical reasons, Randolph's counsel declined to object to the prosecutor's questions. (See *People v. Weaver* (2001) 26 Cal.4th 876, 931 [counsel has no duty to make frivolous or futile objections]; *People v. Memro* (1995) 11 Cal.4th 786, 834 [same].)

Finally, Randolph claims his trial counsel failed to investigate the location of Randolph's cousin, whom Randolph had identified as the real perpetrator, or to secure the testimony of a witness Randolph believed would support his alibi. These purported deficiencies, however, were shared by his new counsel, who did not provide any of the necessary information to the trial court in support of his motion for a new trial. To the extent Randolph's present claim is based on matters outside the record, it is more appropriately evaluated in a habeas corpus proceeding where all relevant facts can be developed. (*People v. Avena* (1996) 13 Cal.4th 394, 419.)

7

In sum, Randolph has failed to identify deficient performance by his trial counsel or to demonstrate it is reasonably probable he would have received a better result had his counsel performed differently. The jury deliberated for less than an hour in reaching its verdict as the evidence placing Randolph at the scene of the two crimes was compelling. Randolph, not his counsel, was to blame for this result.

## DISPOSITION

The judgment is affirmed.


PERLUSS, P. J.


We concur:



ZELON, J.



SEGAL. J.